ALEXANDER B. CVITAN (SBN 81746),
E-Mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720), and
E-Mail: marshah@rac-law.com
PETER A. HUTCHINSON (SBN 225399), Members of
E-Mail: peterh@rac-law.com
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860;  Facsimile: (2l3) 386-5583

Attorneys for Construction Laborers Trust Funds for
Southern California Administrative Company, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> CHAPMAN'S WELDING INC., a corporation, <br><br> Defendant. | CASE NO.: <br><br> **COMPLAINT FOR:** <br><br> 1) **CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;** <br> 2) **SPECIFIC PERFORMANCE COMPELLING AN AUDIT** <br><br> [29 U.S.C. §§ 185, 1132, 1145 and 28 U.S.C. § 1367(a); Cal. Civ. Code § 8024] |

PLAINTIFF, CONSTRUCTION LABORERS TRUST FUNDS FOR

SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited

liability company, alleges:

## INTRODUCTION

1.     This action is brought by a fiduciary administrator on behalf of employee

benefit plans to collect contributions due such plans, and to compel an employer to

submit its records for a complete audit in accordance with the terms and conditions of

310440.1

the plans, the collective bargaining agreement between the employer and a labor organization, and pursuant to statutes.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is grounded upon Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1132 and 1145 and Section 301 of the Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 185.  Venue is proper in this district in that the plans are administered, the Defendant resides in this district and the performance and breach took place in this district.

## PARTIES

3.      Plaintiff is an administrator and agent for collection of several employee benefit plans, and a fiduciary as to those plans including the Laborers Health And Welfare Trust Fund For Southern California, Construction Laborers Pension Trust For Southern California, Construction Laborers Vacation Trust For Southern California, Laborers Training And Re-Training Trust Fund For Southern California,  Fund For Construction Industry Advancement,  Center For Contract Compliance, Laborers Contract Administration Trust Fund For Southern California,  Laborers' Trusts Administrative Trust Fund For Southern California, and Southern California Partnership For Jobs Trust Fund  (hereinafter collectively Plaintiff or "TRUST FUNDS").  Each are express trusts and were created by written agreements and are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3) and multi-employer plans within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A).  The TRUST FUNDS exist pursuant to LMRA § 302, 29 U.S.C. § 186, and ERISA.  The Plaintiff's principal place of business is in, and the TRUST FUNDS' are administered in the County of Los Angeles, State of California.

/ / /

4.     Plaintiff is informed and believes and thereon alleges that Defendant, CHAPMAN'S WELDING INC., (hereinafter referred to as "EMPLOYER") is a corporation organized and existing under and by virtue of the laws of the State of California and the State of Nevada and is licensed to engage in business in the State of California, with its principal place of business in the City of Las Vegas, State of Nevada.

**[OTHERS]**

5.     The Southern California District Council of Laborers and its affiliated Local Unions ("UNION") was and is a labor organization representing employees in industries affecting commerce.  The UNION is not a party to this action.

**FIRST CLAIM FOR RELIEF**
**CONTRIBUTIONS OWED TO TRUST FUNDS**
(Against EMPLOYER)
[29 U.S.C. §§ 185 and 1145]

6.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 5, above as if fully set forth.

**[AGREEMENTS]**

7.     At all times herein mentioned EMPLOYER was and continues to be obligated and bound to written collective bargaining agreements with the UNION and its affiliated Local Unions by virtue of a Laborers Short-Form Agreement for the Construction Industry entered into in or about November 2014 ("SHORT FORM AGREEMENT"), which incorporates the UNION's Construction Master Labor Agreements ("MLA").

/ / /

8.      Pursuant to the MLA, EMPLOYER is bound to the terms of the MLA, and therefore became obligated and bound to all the terms and conditions of said Agreements.  Further, by virtue of said Agreements, EMPLOYER also became obligated and bound to the terms of the Trust Agreements which created each of the TRUST FUNDS as they may be constituted in their original form or as they may be subsequently amended ("TRUST AGREEMENTS").  The SHORT FORM AGREEMENT, MLA and TRUST AGREEMENTS will hereinafter collectively referred to as "AGREEMENTS".

9.      The AGREEMENTS obligate EMPLOYER to pay fringe benefit contributions at the rates set forth in the AGREEMENTS for each hour worked (or paid for) by all employees performing services covered by the AGREEMENTS.

10.      The AGREEMENTS require EMPLOYER and any of its subcontractors or lower-tiered subcontractors, to subcontract work covered under the AGREEMENTS to those subcontractors who are parties to a labor agreement with the UNION and failure to do so will result in damages to the TRUST FUNDS and EMPLOYER will be financially obligated to the TRUST FUNDS for the damages caused therefrom, including amounts measured by the fringe benefit contributions, liquidated damages and interest that would be owed by the subcontractor if signatory to the AGREEMENTS.

11.      The AGREEMENTS further provide that if EMPLOYER subcontracts work to and/or if its subcontractor(s) or lower-tiered subcontractors, subcontracts work covered under the AGREEMENTS to any subcontractor who is delinquent in its obligations to the TRUST FUNDS under AGREEMENTS, then EMPLOYER will be financially obligated to the TRUST FUNDS for the amounts owed by said delinquent subcontractor, including any fringe benefits, liquidated damages and interest owed.

12.      By the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(C), EMPLOYER is obligated to pay to the TRUST FUNDS, (a) interest on the unpaid contributions at rates established pursuant to the AGREEMENTS from their

-4-

respective due dates; plus (b) an amount equal to (1) the greater of interest on the unpaid contributions or (2) liquidated damages for detriment caused by the failure of EMPLOYER to pay fringe benefit contributions in a timely manner, a sum equal to $25.00 or twenty percent (20%) of the unpaid contributions ($20.00 or 10%  to the Laborers Contract Administration Trust Fund) whichever is the greater amount, for each of the TRUST FUNDS to which EMPLOYER is required to contribute.

13.    By the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(B), EMPLOYER is obligated for payment of interest on delinquent contributions from the due date of the contribution through the payment date of the contribution, at the per annum rate of five percent (5%) over the rate set by the Federal Reserve Board at San Francisco, California, effective on the date each contribution is due.

14.    The AGREEMENTS provide the TRUST FUNDS with specific authority to examine and copy all of EMPLOYER'S payroll and business records which may be pertinent to determining whether EMPLOYER has reported all hours worked (or paid for) by employees who perform services covered under the AGREEMENTS, and/or has abided by the subcontracting provisions of the AGREEMENTS and has paid the appropriate fringe benefit contributions to the TRUST FUNDS, and that the EMPLOYER shall be responsible for the costs of such audit.

**[BREACH OF AGREEMENTS]**

15.    Plaintiff is informed and believes and based on such information and belief alleges that EMPLOYER employed workers who performed services covered by the AGREEMENTS and failed to timely pay the rates specified in the AGREEMENTS to TRUST FUNDS on behalf of those workers.

16.    The AGREEMENTS obligate EMPLOYER to permit the TRUST FUNDS to audit and copy all of EMPLOYER payroll and business records to determine whether EMPLOYER has paid the appropriate fringe benefit contributions to the TRUST FUNDS.   Plaintiff has demanded compliance with an audit of

1  EMPLOYER'S records; however, EMPLOYER has failed or refused to comply with

2  the audit.

3        17.    The TRUST FUNDS are informed and believe and thereon allege that,

4  EMPLOYER has failed to pay fringe benefit contributions at the rates set forth in the

5  AGREEMENTS for each hour worked (or paid for) by employees performing services

6  covered by the AGREEMENTS.  Due to EMPLOYER'S refusal to permit an audit, the

7  exact amount of the contributions due and owing have not been ascertained at this

8  time.  Said amounts will be established by proof at the trial herein.

9        18.    All conditions to EMPLOYER'S obligations to make payments under the

10  AGREEMENTS have been met.  The TRUST FUNDS have at all times duly

11  performed any and all contractual duties under or pursuant to any of the

12  AGREEMENTS.

13

14  **[DAMAGES]**

15        19.    As a result of EMPLOYER'S failure to pay the amounts specified in the

16  AGREEMENTS there is now owing and unpaid to the TRUST FUNDS from

17  EMPLOYER for the month of December 2014, the sum of $2,606.83 in damages,

18  (including $2,540.58 in liquidated damages and interest of $66.25,) plus additional

19  amounts that maybe discovered as due and owing by EMPLOYER through an audit of

20  EMPLOYER'S records, according to proof at the time of trial or other hearing

21  including fringe benefit contributions, liquidated damages, audit fees and interest at

22  the plan rate(s) currently 6.0% per annum until payment of all contributions are made.

23        20.    The failure of the EMPLOYER to pay contributions when due caused

24  harm to the TRUST FUNDS and its participants, which is impractical to accurately

25  quantify.  This may include the cost of collecting the contributions from the

26  EMPLOYER or third parties (not including the costs of this litigation), the cost of

27  special processing to restore benefit credits because of late contributions, the

28  temporary loss of insurance coverage by employees (even if later restored) and

-6-

medical harm to participants and beneficiaries who may have foregone medical care when notified that medical insurance ceased because of their employers' failure to pay contributions. The liquidated damages provision of the AGREEMENTS was meant to compensate for this un-quantifiable loss, and is based on the ratio of collection costs over amounts collected, regularly reported to the Trustees. The Trustees of the TRUST FUNDS have the authority, in their discretion, to waive all or part of these liquidated damages. In this case, they have exercised their discretion by declining to waive any liquidated damages, including $2,540.58 in liquidated damages on late paid contributions.

21.    It has been necessary for the TRUST FUNDS to engage counsel to bring this action to compel compliance with the AGREEMENTS which provide that in the event litigation is necessary with respect to any of the fringe benefit contributions and/or damages against Defendant, EMPLOYER, or to compel EMPLOYER to comply with an audit then EMPLOYER would pay reasonable attorney's fees and all other reasonable expenses of collection, including audit fees.

22.    Under the AGREEMENTS and Sections 515 and 502(g) of ERISA, EMPLOYER is liable to the TRUST FUNDS not only for the amount of delinquent contributions according to proof but also (a) for pre-judgment interest on the delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

**SECOND CLAIM FOR RELIEF**
**SPECIFIC PERFORMANCE COMPELLING AUDIT**
(Against EMPLOYER)

23.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 22, inclusive as though fully set forth

herein.

24.    Plaintiff's claim herein is for specific performance of the AGREEMENTS.

25.    The AGREEMENTS provide the TRUST FUNDS with specific authority to examine the payroll and business records of employers, including the EMPLOYER, to determine whether they have reported and paid contributions on all hours worked by (or paid for) their employees who perform work covered under the AGREEMENTS, and whether they have otherwise abided by the payment obligations of the AGREEMENTS.  The AGREEMENTS further provide that employers, including the EMPLOYER, shall pay the TRUST FUNDS' attorney's fees if legal action is necessary to compel the audit, and audit fees to complete the audit of EMPLOYER'S records and the TRUST FUNDS have delegated the authority to perform such audits to Plaintiff.

26.    Plaintiff has requested access to EMPLOYER'S payroll and business records for the purpose of conducting an audit; however, EMPLOYER has failed and/or refused to allow the TRUST FUNDS an audit of its payroll and business records.  Plaintiff seeks an audit of EMPLOYER'S records covering the period from November 1, 2014 to the date of the audit.

27.    The TRUST FUNDS have no adequate or speedy remedy at law in that EMPLOYER refuses to comply with the production of its payroll and business records for an audit.  Plaintiff therefore respectfully requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYER to comply with its obligation under the AGREEMENTS and ERISA to fully produce its books and records in order for Plaintiff to complete an audit to determine if additional amounts are due.

28.    Upon completion of the audit sought herein, Plaintiff will seek recovery of any delinquent contributions found due, as well as liquidated damages, audit costs, other damages, interest in addition to attorneys' fees and costs as provided for by

310440.1

AGREEMENTS and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

WHEREFORE, the TRUST FUNDS pray for judgment against EMPLOYER as follows:

## FOR THE TRUST FUNDS' FIRST CLAIM FOR RELIEF

1.     For the sum of at least $2,606.63 in damages and interest pursuant to 29 U.S.C. § 1132(g)(2);

2.     For additional damages including contributions, liquidated damages and audit fees according to proof at the time of trial or hearing, plus interest at the plan rate(s) from the date contributions became due.;

3.     For reasonable attorney's fees;

4.     For the costs of suit herein; and

5.     For such other and further relief as the Court deems proper.

## FOR TRUST FUNDS' SECOND CLAIM FOR RELIEF

1.     That EMPLOYER, its managing officers, including EMPLOYER'S President and RMO, Kevin Chapman, its managing employees, agents, and all persons acting by, through, or in concert with the EMPLOYER, be compelled to forthwith submit to an audit of EMPLOYER'S payroll and business records covering the period from November 1, 2014  to the date of the audit and that EMPLOYER produce the following payroll and business records to the TRUST FUNDS for inspection, examination and copying:

        1.1.    All payroll and employee documents including, but not limited to, EMPLOYER'S payroll journals, employees earning records, certified payrolls, payroll check books and stubs, canceled payroll checks, payroll time cards, state and federal payroll tax returns,

-9-

310440.1

labor distribution journals and any other documents reflecting the number of hours which EMPLOYER'S employees worked, their names, social security numbers, addresses and job classifications on the project on which the employees performed their work.

1.2.   The project files including all documents, agreements and contracts between EMPLOYER and any general contractor, subcontractor, builder and/or developer, field records, job records, notices, project logs, supervisor's diaries or notes, employees diaries, memorandum, releases and any other documents which related to the supervision of EMPLOYER'S employees on the projects on which they performed their work.

1.3.   All EMPLOYER'S documents related to cash receipts including but not limited to, the cash receipts journals, accounts receivable journal, accounts receivable subsidiary ledgers and billing invoices relating to the projects worked on under the AGREEMENTS.

1.4.   All EMPLOYER'S bank statements for all checking, and savings accounts relating to projects worked on under the AGREEMENTS.

1.5.   All EMPLOYER'S documents related to cash disbursements, including but not limited to, vendors' invoices, cash disbursement journal, accounts payable journals, check registers and all other documents which indicate cash disbursements relating to the projects worked on under the AGREEMENTS.

1.6.   All collective bargaining agreements between EMPLOYER and any trade union and all Monthly Report Forms submitted by EMPLOYER to any union trust fund.

2.   For any delinquent contributions, liquidated damages, interests, audit costs, attorneys' fees and costs as required by the agreements and ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2);

3.     For reasonable attorney's fees;

4.     For TRUST FUNDS' costs of suit herein; and

5.     For such other and further relief as the Court deems proper.

DATED:  November 9, 2016          ALEXANDER B. CVITAN
                                  MARSHA M. HAMASAKI and
                                  PETER A. HUTCHINSON, Members of
                                  REICH, ADELL & CVITAN,
                                  A Professional Law Corporation


                                  By:   /s/ Marsha M. Hamasaki
                                        MARSHA M. HAMASAKI,
                                        Attorneys for Plaintiff

310440.1